The first case on the document this morning is 2-22-0096, the people of the state of Illinois, defendant Appali, the Anthony F. Marcus defendant appellant, arguing on behalf of the appellant, Mr. Nicholas Curran, arguing on behalf of the appellee, Mr. John G. Becker. Gentlemen, are you both ready to proceed? Yes, ma'am. Council, then, when you're ready. Okay. May it please the court, counsel for the state. My name is Nicholas Curran. I'm an attorney with Kathleen T. Zellner and Associates and I represent the defendant appellant, Anthony Marcus. The sole issue in this appeal is whether the post-conviction court's factual and credibility findings are against the manifest weight of the evidence and, relatedly, whether the court should have granted the defendant's post-conviction petition. The procedural history of this case is relatively straightforward, but it is helpful to frame the issue that we'll be discussing here this morning, so I will just briefly summarize it. In June of 2014, Mr. Marcus was charged with the first-degree murder of his wife and daughter. In February of 2015, so approximately eight months later, he entered a negotiated plea of guilty but mentally ill to one count of first-degree murder in exchange for dismissal of the remaining counts and a recommended sentence of 45 years. After the defendant entered the plea, he later filed a post-conviction petition alleging that he had been denied effective assistance of counsel during the plea negotiation process. Specifically, he alleged that his attorney, Keith Grant, withheld evidence from him material to his decision whether to enter the plea. More to the point, he alleged that Mr. Grant had withheld from him the fact that two experts had offered opinions, one in the form of a preliminary opinion and one in the form of a report, that concluded that Mr. Marcus was legally insane at the time that he committed the offenses. The defendant alleged that had that information been made known to him, he would have denied or would not have entered the plea and instead would have insisted on taking the case to trial. The long and short of it is you have to find that his representation fell below an objective standard of reasonableness. You have to show prejudice. So how are you going to show prejudice when I think that the plea hearing, I think it was Judge Bridges, was extremely thorough with your client and your client acknowledged on several occasions that he discussed the report and he agreed with everything that the judge was saying. So how do you get past that prejudice at that point? Your Honor, that's a good question and it takes diving into the facts somewhat. So I agree that the admonitions that were provided by the trial court prior to acceptance of the plea were very thorough. However, they did not address the central issue in this case, which is whether or not the actual opinion pertaining to the legal question of whether or not Mr. Marcus was insane was actually shared with Mr. Marcus prior to entry of the plea. Wasn't there a portion where, I think it's Mr. Grant indicated, that he read out loud to the defendant that Dr. Connery had determined defendant to be insane at the time of the offense? So he knew that. Your Honor, that's a factual dispute and that is a factual dispute that we're asking. Right, but then we back up and say the court made pretty clear findings on credibility. Your Honor, they did. How is that against the manifest way to the evidence? Thank you, Your Honor. Particularly when you add the extra layer of how many witnesses testified that the defendant said repeatedly that he did not want to go to trial, which of course is the only way to raise an insanity defense. Yes, Your Honor. Part of this is you really have to dive into the facts and the timeline of what happened here. And this case is very unique in that what we have here is a significant amount of evidence in the form of notes and communications contemporaneous to when events took place that contradict the lower courts, factual and credibility findings. Whose notes would those be? Sarah Price's notes, Your Honor. And if I may briefly elaborate on that. So Keith Grant testified that by July of 2014, Mr. Marcus had expressed to him a desire to avoid trial. But we have written documentation to the to the effect that Mr. Marcus wavered in that desire to avoid a trial by October of 2014. So Sarah Price was employed by the Public Defender's Office. She was a social worker. She met with Mr. Marcus throughout the duration of his stay at the Lake County Jail. And she has notes from October 30 of 2014 that indicate that Mr. Marcus was weighing decisions about what he should do in terms of taking a plea or going to trial. Did Mr. Marcus tell the doctors that he didn't want to go to trial? The mental health experts with whom he spoke? Yes, he did. He did make those. He did make those statements. He said he didn't want his family through it. He didn't want his family to look at autopsy photos and he didn't want his daughter's wedding to be spoiled by a trial. Correct. I don't dispute that. He did make those statements to the experts. He wanted resolved by the holidays. Well, I don't know that he that was something that Mr. Grant alleged. I don't know that Mr. Marcus ever conceded that during his testimony. He was more than alleged. He testified to it. That's a fair characterization. I believe Keith Grant testified to that. I don't believe that Mr. Marcus ever agreed that he that's what he told Mr. Grant. Mr. Grant talked talked about or Mr. Your client and you and your briefs indicate that Mr. Grant was trying to talk him out of an insanity defense. Correct, Your Honor. So he was giving him advice. Insanity defense doesn't usually fly in Lake County. It's not a good defense. Is that trial strategy? And if not, why not, Your Honor? And this is a point of contention I have with the lower courts ruling. So Mr. Marcus's argument is not that his attorney was deficient by telling him that insanity is difficult to prove. The argument is that by only telling him that. And at the same time, failing to let him know that. However, if you want to proceed with that defense, we have opinions for mental health experts that will support it. That is when it becomes deficient performance, because in that scenario, that is when the defendant has not been given all of the information that's needed to make an intelligent, informed decision about whether or not. Why didn't he tell the court that he had reviewed those reports? Was Mr. Marcus testified at the trial or excuse me at the evidentiary hearing? Right. Correct. What he testified to was that in his mind, he and Mr. Grant had referenced the plea during their meetings leading up to the plea hearing. Wait a second, though. I mean, how is the court ever to perfect proper admonishments if later we say, well, that's not what I was thinking? I mean, I have to say, Judge Bridges here did an extraordinary job. He went over and over it. How do we ever accept admonishments if later we listen to a defendants as well? I know what the question was, and I know I said yes, but that's not really what I meant. Well, Your Honor, this in no way, shape or form. Is this an allegation that Judge Bridges should have done more? The admonishments he gave were thorough. They just did not address the heart of the issue, which is whether or not. How can they be thorough and not address the heart of the issue? Your Honor, because I don't believe that there's any sort of prescription or there's no rule that requires a judge to contemplate every conceivable way in which defense counsel may have not adequately advised his attorney. That's why the allegation is not that the trial courts admonishments were insufficient. Rather, it's that trial counsel's advice. Well, but they go hand in hand, don't they? I mean, the court says you understand that this is not like this is not the same as a verdict of not guilty by reason of insanity where you would be absolved of the criminal responsibility. You understand that? And he said, yes. So I mean, you don't have you're saying you don't have the defense attorney telling him. Mr. Grant said he did tell me read the report out loud. But you have Judge Bridges telling him the difference between the two. And he understands that's not what I want to do. I want to plead guilty. The way I'm pleading right now. I don't want to get you by reason of insanity. Yes, Your Honor. And this is where, again, this is you really have to dive into the facts and circumstances of this case. So the attorney is there to be an advocate for the defendant. Judge Bridges was not there to be an advocate for Mr. Marcus. He was there to perform his duties as trial judge and to make a record, which he did. That does not insulate trial counsel from a claim of ineffective assistance of counsel. The fact is, there's you cannot tell by reading that colloquy whether or not the the the opinion of Dr. Conroe was shared with Anthony Marcus. And again, I hearken back to that email from October 30 of 2014. We get to a hearing. People have motivations for testifying and shading their testimony a certain way. On October 30 of 2014, when Sarah Price wrote her email to Keith Grant, she had no motive to do anything other than accurately convey information to him. And in that email, she said, I think he referring to Mr. Marcus is still having a hard time making a firm decision about whether to take the case to trial. This is a man who was served in the U.S. Navy. He had no criminal history whatsoever. He had a security classification to work for an independent contractor, Great Lakes Naval Station. He does not fit the mold of someone who would just out of the blue commit a crime like this. You can't assess his credibility in the same way you would someone else who has years of experience with the criminal justice system. Well, the defendant doesn't argue that counsel provided him legally erroneous advice. He said that he discouraged him from going forward with an insanity defense. That's what that's what the defendant in this case is. And with all due respect, I don't think whether we have a prior criminal history as a defendant or not, an insanity defense is going to make a hell of a difference. But that being said, he never said that he he's his main agree. His main complaint is that he was talked out of the insanity defense. And that's what it sounds like in what what Grant is saying and what Mrs. Price was saying to Grant is that he's looking he's he doesn't know that he wants to go to trial. Grant is trying to get a plea here because he said it at one point. I want to get a plea on this case. But does that mean he was by discouraging him from insanity defense that he didn't tell him about insanity? No, Your Honor. Those are two different issues. So the fact that there is something called insanity that you can assert is distinct from, by the way, we have an opinion from a mental health expert that you met the definition of being legally insane at the time of the offenses. And that distinction is not trivial. As Mr. Marcus testified at the third stage hearing, the only rational thing a person would do in his position without the knowledge that there is evidence to support the defense is to take the plea. Right. We just come back down to the credibility finding the court found the other witnesses more credible, including Grant, who said, I went over these reports with him. Right, Your Honor. And that is what we contend and what we devote a significant amount of time to in the brief arguing that that credibility finding simply is not sustained by the record whatsoever. But it's your. I'm sorry. Right. Yes, Your Honor. I agree with that. Certainly that that is our burden at that point to show that the trial courts, or excuse me the post conviction courts findings are not supported by the record. And we spend quite a bit of time in the brief making that argument, Your Honor. With all due respect, you keep honing in on a communication from Miss Price to defense counsel at the end of October this plea was nearly four months later. I mean, defendants change their mind. They do, Your Honor, but the consequences way that all of it and it appears unmistakably that he was very concerned about his surviving daughter and putting her through a trial, and that would knowing it would require her to testify. He didn't want to do that, Your Honor, I, so the, and here's where the facts are so important there's evidence in the record that his desire to enter a plea was not set. Long after that, October 30 2014 day. For example, he filed a grievance on January 25 2015 with the Lake County Jail complaining about a broken terminal in the law library because it was impeding him and his ability to assist in his defense, but he never complained about grant. No, Your Honor, I don't believe that. Mr Marcus because again he had never been through anything like this, this is where the psychological state of the defendant comes into play, we have been there's no issue of fitness here. No, there's no issue of fitness with regard to whether or not he was mentally fit. Correct, Your Honor, I'm not I'm not talking about fitness what I'm talking about is his psychological makeup. During those months that he was at the Lake County Jail, and I believe my, my time is up here. Is that the time that was a little bit out of practice. So, certainly though, setting aside the issue of fitness his psychological makeup is incredibly important to assessing what actually took place here. I know this is something that people don't want to acknowledge but somebody did you put that in your complaint in your, your brief anything about a psychological makeup. I believe that it may have been referenced, I don't know that I dive deep into went deeply into it, it was something that was an issue though at the third stage hearing. Mr Marcus was suffering from severe panic attacks he was in a suicide cell. There was a lot going on, and he was relying on his attorney to be an advocate for him, and his attorney did not do that by not sharing with him the most important information remain to his decision whether to enter the plea 45 years for two murders. You don't think the attorney was representing him wisely. Your Honor, it's a, it's an effective life sentence for Mr Marcus, based on his age. Thank you. Thank you. Just McLaren did you have any questions. That's one or two. Thank you. Also the court said, so you agree that you have this mental illness as Dr. Conroe has found and you agree also that at the time of the crime in this case you in fact we're saying is that correct. I'm sorry I didn't catch the last part of that, and you agree that you were saying he was saying, we're saying, as a me. No, Your Honor. In fact, that is the, the one time during the plea colloquy that Mr Marcus hesitated and said that he did not understand the question, and then I was going to say exactly that. Except you didn't hear the last part so you're right that's what he said. The court then said, in other words, I'm trying to make sure that you have had discussions with your attorney about the ability to raise an insanity defense. And so you have had these questions and conversations with your attorney, is that correct. Yes, Your Honor. And you have reviewed and discussed Dr. Conroe's report, is that correct. Yes, Your Honor. And again, Your Honor. Oh, I apologize I didn't mean to cut your honor off. No, I'm, I'm done. Thank you, Your Honor. Yes, so I don't I don't dispute any of those things. However, all of those things are true. And at the same time, it can also be true that the central issue of whether or not Dr Conroe's opinion on the issue of sanity was ever shared with Mr Marcus. So what Mr Marcus has said is that they did talk about the idea that an insanity defense could be asserted in fact, part of what he is alleged and I think what the record bears out is he was told it's incredibly difficult to prevail in an insanity defense so of course it's something they discussed, but that is distinct and different from whether or not Keith grant shared explicitly, you know what Dr Conroe has said you were insane at the time of the offenses. Any other questions. I counted you will have an opportunity for reply. Thank you very much. Are you also ready to proceed then. Please the court counsel defendants representations in his brief, did you state your name for the record. Oh, my name is john Barrett for the people of the state of Illinois. Defendants representations in his brief are diametrically opposed to the representations that he made to his counsel, Drs Conroe and Kovar and Sarah price from the inception of the case. At no point, the defendant ever condition, his desire to forego a trial on whether or not insanity was in play, or possible defense. How do you respond to Mr Kearns argument that Keith grant never told him that Conroe and actually the other doctor had found that an insane he was insane at the time of the offense. Well granted testify at the post conviction hearing that he had shared that with him and he had specifically read the report with defendant. And your honors were apt to, you know, boil this down to a credibility determination this comes down to, does the evidence at the hearing, bear out what the court decided and it does, there's a wealth of evidence that defendant, never would have contemplated realistically going to trial, given that his surviving daughter would have been exposed to horrendous autopsy photos of her sister and mother, having been strangled to death defendant didn't want to media circus. He is his foremost thought throughout the trial, or throughout the pre trial proceedings was to avoid going to trial. And another thing we do need to look at is whether there would have been any reasonable probability that had he known, even if we took defendant in his word that that had not been shared with them had that report been shared that he that would And that is just never a material part of his considerations. And another thing we have to look at on the prejudice front would be the availability of the insanity defense did not make it likely to prevail so so let's say insanity was in play let's say insanity was supported and defendant decided that, yes, I do want to go to trial. That is still a very long shot of saying that he realistically would have been acquitted, because the state would have put forth their own experts to challenge the expert opinions, there would have been a wealth of evidence presented to impede defendant from succeeding in that, in that defense, not to mention just the gut wrenching proceedings, detailing you know these murders so there's just really no realistic possibility that defendant would have would have gone to trial proceeded to trial even had he known, as he's alleged that the report indicated that insanity was supported was the one daughter handy was the daughter handicap. The daughter who was killed was handicapped. She was in a wheelchair. And then after he had strangled the daughter, carry her body downstairs and lay the body next to the mother's body, and then he strangled the family dog and smoked a few cigarettes and called 911. So clearly this is, this is the conduct of somebody who is in a desperate situation but is aware that his conduct is had their legal consequences so he called 911. There's experts who would testify that he had an awareness, although he was mentally ill. He may have been suffering from a slew of mental disorders at the time he was still he still appreciated the criminality of what happened. What do you make of the communication from Miss price around the end of October, to defense counsel. Again, just comment about the defendant wavering. At that point, defendant had a lot on his mind he had a lot of different considerations, and before actually moving forward with his expressed goals of going to trial, you know that's going to that's still going to take time. There's still going to be a process that's not wavering on. Do I potentially want to assert an insanity defense. I mean that's, it doesn't indicate that that that's just a bridge too far. The dismissal of the second murder here was pursuant to a plea had the had the case gone to trial, safe to say you would have proceeded on both, or the state would have proceeded on both on the lower. Correct. And then just to reiterate about the admonitions. Defendant had mentioned that the, the defense counsel isn't somehow insulated by the admonitions of the trial court where they're thorough as they were here but if we look at people be skill on, which is a second district case 2017 he'll have to be 150681. That that case holds that the detailed admonitions by a court resulting in a defendant's expressed understanding of the same may cure any prejudice stemming from alleged deficiencies of counsel. So, in a way, the courts admonitions here as thorough as they were did cure any possible prejudice stemming from the non disclosure of the report. But as we've stated and as we've gone over grant expressly reviewed and read that report with defendant and testified to that at the post conviction hearing and that's what the evidence bears out. Give me that site again. 2017. Yes, that's 2017 it'll have to be 150681, and that's at paragraph 29. People be skill. SK I ll. Thank you. If there aren't any further questions I think the state at this time would request this court. Affirm the judgment of the circuit court. Just as we're clear if you have any questions. Yes, I do. Mr. D martini. The prosecutor said, relative to the report of Dr. Conroy Yes judge in terms under the statute, we can have a hearing and both sides would stipulate to the psychological expertise. Dr Conroe, and the finding the psychological finding that report. But I believe we would agree, not to the legal conclusions but the psychological conclude. Now, the state enter into a plea agreement if they didn't agree with the legal conclusions, and the legal conclusion was guilty but mentally ill. Well, Your Honor, that's a good question. The fact that the report would support an insanity defense isn't the same that there was strong evidence or the value of the evidence that he wasn't saying at that time. So just the report didn't indicate anything other than an insanity defense would be supported, based on the psychological factors. It didn't have any comment on the strength of the people's case. The defendant's case or anything of that nature. So, again, that's where the state's experts would come in and and kind of chisel away at the strength of that determination. My, my point is, if the report indicated a legal conclusion of guilty but mentally ill. And the state disagreed with that, as stated by Mr. D martini. Then why would the state enter into the plea. The counterfactual conditional. It implies that the legal conclusion could not be guilty but mentally ill it had to be something else. Does that make sense to you. Well, I mean, during plea negotiations both sides are giving concessions to each other. So in that sense, you know, not having to put forth the evidence there's always a risk that conviction may not bear out by a trial so I think that just the state's conceding during, during the plea that, you know, to a term that it wouldn't necessarily say that it agreed with. It agreed with the term to the plea but it didn't. It didn't adopt that as its as its position in the case. That's the best I can, I can answer your honor. Okay. I have no further questions or comments. None. Thank you. Thank you very much for your arguments. Mr current you wish to offer a reply. Yes, sir. Briefly your honor. The likelihood of Mr Marcus prevailing is not part of the test. The question as to the prejudice prong is whether or not had the information been provided to him. Would he have entered the plea, or would he have insisted on going to trial so regardless of whether or not ultimately he would have been successful. That is not an issue in this appeal. How do we get around statement after statement after statement that he did not want to proceed to trial. The one in October, your honor I disagree with the notion that it was statement after statement after statement his Keith grant testified that he was adamant about not wanting to go to trial. But of course that is that conflicts with the two doctors reports indicate that he didn't want to go to trial, your honor and again this is where you cannot, you cannot look at this in a vacuum. So you have to look at how is the information that he is being provided, affecting his disposition towards whether or not to take the case forward to trial. So we also have to overcome is what he told the trial court in the admonitions. How do we overcome that when he indicated time, and again, in the admonitions that he understood this and as I read earlier the judge even said, you know, this is not an insanity. Now I know you're saying, Oh, but at that point he didn't know he was able to raise an insanity defense, but even if he had not known he still indicated, he didn't want to go to trial on insanity defense, he wanted to proceed this way. Your honor, I think we should, if we were to parse this out I think everyone would agree that a reasonably competent attorney in Mr grants position had a duty to share with his client, the opinion from Dr Conroe that he was legally insane, and he said that he did. So therefore that credible, so that factual dispute is significant we all agree. Right. And so what we argue in the brief and layout and painstaking detail is that the record overwhelmingly cast doubt upon Mr grants credibility in that regard. So joy Gossman, who was present during the meeting where he said he read Dr Conroe report to Mr Marcus had no memory of of Keith grant reading the report to the defendant. She had a detailed memory of that visit. She took notes of that visit, the notes do not reflect that he ever shared that opinion with Mr Marcus, that he even went over the report with Mr Marcus or referenced offhand Hey, we got received the report, it substantiates the guilty but mentally ill plea, which is what Mr Marcus meant during the plea colloquy when he said he had gone over the report. And your honor, several months, and this is something that the lower court completely failed to address. Several months after he took the plea, he wrote a letter to the public defender's office he addressed it to Sarah price and said hey, can I have a copy of that report, Dr Conroe's report. So price went to Keith grant and Keith grant told her no, we can't send them the report. Even though Keith grant believed that the report was a publicly filed document. At that time, why would he not send Mr Marcus the report, why. That is a question that is not addressed at all in the lower courts decision, and I would love for someone to give me a reasonable explanation for why he withheld refused to send a copy of that report to his client, a report pertaining to the clients, mental health, after the client had entered a plea. Why would he do that. The only reasonable explanation, I can come up with is because he was continuing on with withholding this information that he knew there was a chance if Mr Marcus learned of it. It would completely have changed the picture, and he would come back and make an ineffective assistance claim because that information was never shared with him. He would have done that in any event, he did it now. Correct. That's correct. I believe that Mr grant was doing what he could to avoid the situation we're in now, which is an ineffective assistance claim being made against him. And if we accept the fact that Mr grant withheld that information from Mr Marcus. The next question, logically becomes, why, why would he withhold that information from him. And I would respectfully submit it's because he knew that that opinion would impact Mr Marcus's decision to enter the plea. Justice McLaren do you have any final questions. Yes, I'd like to have a response to my question of the appellate prosecutor. And the fact that when there was not a stipulation to the legal conclusion wouldn't that have put this person who's supposed to be deliberative and intelligent figure out that maybe he should have answered the questions, relative to, did he discuss the report and whatever. At least a raise a red flag or make further inquiry. If he's going to make an inquiry about a computer that isn't working, why wouldn't he make an inquiry about something as substantial as this. I think that's a fair question but I think that that's a question that seems reasonable to you based on your years of legal education training and experience. Mr Marcus had no experience with the criminal justice system. And I'm sure someone being in his position entering a guilty plea, things are happening pretty quickly. He may not be exactly processing what's happening, he's just trying to get through it. I, you know, when I read that portion of the colloquy. I at first did not completely catch on to what it was, he was saying, and was only upon giving it further thought that oh what he's referring to what he's not stipulating to is Dr Conroe's opinion on sanity, which we all know that now because we've read the report we've seen the report. I think it's completely unfair to suggest that that statement on the part of the prosecutor should have prompted Mr Marcus to ask more questions. I mean the reason we someone is entitled to counsel is they need someone who has the legal training required to be an advocate for the person. And so Mr Marcus was dependent upon his attorney to give him legal advice and to share information with him. That was material to the decisions that he was making. I have no further questions. Further questions. Thank you, counsel, thank you for your time for excellent arguments this morning and there will be a decision issued in due course, we will be in recess until 1030 at the time of the next argument. Thank you.